**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

**WASSERMAN, JURISTA & STOLZ, P.C.**
110 Allen Road, Suite 304
Basking Ridge, NJ  07920
Phone: (973) 467-2700
Fax: (973) 467-8126
Counsel for Robert M. Pietrowicz, Creditor
**LEONARD C. WALCZYK**

In Re:

**WILLIAM CHARLES HOVEY,**

                           Debtors.

Chapter 13

Case No. 19-28149

Honorable Rosemary Gambardella

**Hearing Date: November 20, 2019**
**                      10:00 A.M.**

---

**CROSS-MOTION TO DISMISS THIS CHAPTER 13 CASE AS BAD FAITH**
**FILING AND OPPOSITION TO DEBTOR'S MOTION FOR RELIEF**
**FROM THE AUTOMATIC STAY TO PURSUE APPEAL**

---

**TO THE HONORABLE ROSEMARY GAMBARDELLA**
**UNITED STATES BANKRUPTCY JUDGE**

        Robert M. Pietrowicz, creditor herein, objects to the Debtor's motion for automatic stay

relief to pursue appeal and cross-moves for an Order to dismiss this Chapter 13 case and in so

doing, respectfully represents to this Court as follows:

**INTRODUCTION**

        1.        Robert Pietrowicz (hereinafter "Cross-Movant" or "Creditor"), objects to Debtor

William Hovey's ("Debtor") motion for relief from the automatic stay to pursue an appeal of a

pre-petition judgment obtained by Creditor against the Debtor and moreover, brings this cross-

motion against the Debtor to have this Chapter 13 bankruptcy case dismissed in accordance with

11 U.S.C. §§ 105, 109(e), 1307(c), and 1325(a) of the United States Bankruptcy Code (the "Code"), because the Debtor's Chapter 13 bankruptcy filing was not done in good faith, because the Debtor is not eligible to be a Debtor under Chapter 13, and because the proposed Chapter 13 Plan is patently non-confirmable and is not proposed in good faith.

2.      Attached to the Certification of Robert Pietrowicz submitted herewith is a true copy of the pre-petition judgment obtained by Creditor against the Debtor in excess of $512,500, as amended.  The original judgment and amended judgments are annexed as exhibits to the Creditor's Certification submitted herewith.  Incredibly, the Debtor scheduled said Creditor Pietrowicz' claim in an unknown amount as contingent, unliquidated and disputed despite the fact that there is a pre-petition judgment entered liquidating the amount beyond dispute.

3.      The pendency of an appeal of a judgment does not render the debt reduced to judgment unliquidated and contingent within the meaning of the Bankruptcy Code §109(e) which limits Chapter 13 availability to individual debtors with non-contingent liquidated unsecured debts aggregating less than $394,725.  *See* <u>In re Albano</u>, 55 B.R. 363 (D.N.D.Ill. 1985), and cases cited *infra* at Paragraph 10.

4.      As stated more fully herein, the Debtor does not meet the eligibility requirements for Chapter 13 pursuant to 11 U.S.C. §109(e), which limits Chapter 13 eligibility to Debtors "having regular income that owe, on the date of the filing of the petition, non-contingent, liquidated, unsecured debts that aggregate less than $394,725."  11 U.S.C. §109(e).

5.      Additionally, the Debtor's own Schedule I of income annexed to his petition shows no regular income, which is an additional requirement for Chapter 13 eligibility. 11 U.S.C. §109(e).

6. Finally, the Debtor's schedule of unsecured creditors indicates only one other additional unsecured creditor for a debt of approximately $17,471.49, this is a bad faith filing done as a litigation tactic in what is otherwise a two party dispute. "Indeed, if there is a 'classic' bad faith petition, it may be one in which the petitioner's only goal is to use the automatic stay provision to avoid posting an appeal bond in another court." In re Integrated Telecom Express, Inc., 384 F.3d 108, 128 (3d Cir. 2004).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

7. The undisputed material facts underlying this cross-motion and objection to Debtor's motion for stay relief to pursue appeal are set forth in the accompanying Certification of Robert Pietrowicz ("Pietrowicz Certification"). Briefly restated, creditor is the holder of a pre-petition judgment in the approximate amount of $512,500[1] against the Debtor. Incredibly, the Debtor scheduled creditor Pietrowicz's claim on the schedule of unsecured creditors in an unknown amount and as contingent, unliquidated and disputed. The Debtor does this even though admitting in his motion for automatic stay relief that a pre-petition judgment was entered against the Debtor individually, jointly and severally, prior to his bankruptcy filing by the Superior Court of New Jersey in a case entitled *Robert M. Pietrowicz, et als. v. William C. Hovey, et als.*, Docket No. MRS-L-796-14. There is only one other creditor listed on the Debtor's schedule of unsecured creditors, a credit card creditor in the amount of approximately $17,471. Debtor indicates no regular monthly income from his job as a "consultant" as indicated on Schedule I of Monthly Income annexed to the Debtor's bankruptcy petition. Debtor has failed to give valuations for a number of assets and has claimed exempt property well in excess of what is allowed under 11

---

[1] The original judgment was amended to add post-judgment and interest in the amounts indicated in the exhibits to the Certification of Robert Pietrowicz submitted herewith.

U.S.C. §522(d).[2] Essentially this is a two party dispute, with the bankruptcy filing precipitated by the Debtor simply to avoid having to post an appeal bond. The fact that there may be a pending appeal has no bearing on whether the judgment debt should be determined to be contingent or unliquidated for Chapter 13 eligibility purposes. The bankruptcy filing in order to post an appeal bond in what is essentially a two party dispute is indicative of a bad faith bankruptcy filing.

## LEGAL ARGUMENT

### A.  Debtor Fails to Meet Eligibility for Chapter 13 Pursuant to 11 U.S.C. §109(e).

8.      The eligibility requirements for a debtor under Chapter 13, which governs the adjustment of debts of an individual, are contained in §109(e) of the Bankruptcy Code. The eligibility requirement as set forth in §109(e) are specific and restrictive, with monetary amounts established to govern eligibility so as to ensure that those persons for whose benefit the chapter is directed are those who employ its provisions.

9.      The first requirement found in subsection (e) of §109 is that the Chapter 13 debtor be an "individual with regular income,", or such an individual and that individual's spouse. The phrase "individual with regular income" is defined in §101 of the Code to mean an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under Chapter 13, other than a stockbroker or commodity broker." 11 U.S.C. §101. This definition, barring debtors from Chapter 13 eligibility if they are unable to make plan payments, is closely related to the standard of plan feasibility for Chapter 13 plan confirmation under §1325(a)(6). Schedule I annexed to the Debtor's bankruptcy petition indicates that he has net monthly income from a business of $2,103, based on purported monthly gross receipts of $23,997.

---

[2] Creditor Pietrowicz and the Standing Chapter 13 Trustee have separately filed Objections to the exemptions claimed by the Debtor.

However, this is not consistent with what is represented by the Debtor on the Statement of Financial Affairs in response to question #4 requesting annual income for 2019 and the two years prior to the bankruptcy filing. Debtor represents that he only earned gross income of $15,000 *year to date* from operating a business from January 1, 2019 through the date of the bankruptcy filing; Debtor indicates an "unknown" amount for gross income for *calendar year* 2018, and only $11,244.00 of gross income from operating a business from *calendar year* 2017. Thus, the Debtor cannot be establish that he has regular income sufficient to fund a feasible Chapter 13 plan.

10.     The second requirement for Chapter 13 eligibility is that the debtor must owe less than $394,725. of non-contingent, liquidated unsecured debts. In an exercise of bad faith, the Debtor listed creditor Robert Pietrowicz' unsecured debt as disputed, contingent and unliquidated in an unknown amount, even though there is a pre-petition judgment entered against the Debtor in favor of Robert Pietrowicz in excess of $512,000. See Certification of Robert Pietrowicz and exhibits thereto submitted herewith. The judgment fixes the amount and cannot be considered contingent or unliquidated. Moreover, as stated above, the fact that Debtor seeks to file an appeal does not make the debt contingent or unliquidated. See In re Albano, 55 B.R. 363 (D.N.D.Ill. 1985); see also In re Mitchell, 255 B.R. 345 (Bankr. D.Mass. 2000) (pre-petition judgment against chapter 13 debtors which was pending on appeal as of the petition date was entitled to recognition as a "final judgment" and thus, the amount of debtors' unsecured indebtedness exceeded the limits imposed by the Bankruptcy Code and the debtors were ineligible for chapter 13 relief). *Accord*, In re Johnson, 191 B.R. 184 (Bankr. D.Ariz. 1996); In re Weller, 189 B.R. 467 (Bankr. E.D.Wis. 1995). See also In re Imagine Fulfillment Services, LLC, 49 B.R. 136, 147 (Bankr. C.D.Cal.

2013); In re Huelbig, 313 B.R. 540, 543 (D.R.I. 2004); In re Robinson, 2012 WL 5457336 (Bankr. D.Mass. 2012).

11.     Thus, because Debtor fails to meet the eligibility requirements of §109(e) for Chapter 13, this bankruptcy case must be dismissed.

**B.     The Legal Standard Applied when Examining Issues of Good Faith under §§ 1307(c), 1325(a)(3)  and  1325(a)(7) is the Totality of Circumstances Test.**

12.     The Bankruptcy Code provides authority for the bankruptcy court to dismiss a Chapter 13 case or convert it to a Chapter 7 liquidation based on "cause."  This authority is found in 11 U.S.C. § 1307(c) which provides that "[e]xcept as provided in subsection (e) of this section, on request of party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause…." Id.  (Emphasis added).

13.     Code Section 1307(c) enumerates eleven non-exhaustive examples of factors constituting "cause" for relief.  While bad faith is not specifically enumerated in these eleven factors, bankruptcy courts have the authority to dismiss a Chapter 13 to Chapter 7 premised on bad faith pursuant to 11 U.S.C. § 1307(c). See, e.g., In re Myers, 491 F.3d 120, 125 (3d Cir. 2007);  In re Lilley, 91 F.3d 491, 496 (3d Cir.1996).

14.     With the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress enlarged the requirements for confirmation of a debtor's chapter 13 plan to include that "the plan has been proposed in good faith and not by any means forbidden by law," 11 U.S.C. 1325(a)(3), and a determination of good faith in the filing of petition. 11 U.S.C. § 1325(a)(7).

15.     In <u>Marrama v. Citizens Bank of Mass.</u>, 549 <u>U.S.</u> 365 (2007), the Supreme Court recognized that at the outset of a chapter 13 case, in response to a motion to dismiss the case or convert the case to a case under chapter 7 and prior to a confirmation hearing, a court can determine whether the debtor acted in bad faith prior to, or in the course of, filing a chapter 13 petition. <u>Marrama</u>, 549 U.S. at 368.  It stated that "despite the absence of any statutory provision specifically addressing the issue, the federal courts are virtually unanimous that prepetition bad-faith conduct may cause a forfeiture of any right to proceed with a Chapter 13 case." <u>Id.</u> at 367-68. It later discussed the expansion of Section 1307(c) to include prepetition bad-faith conduct as the statutory authority for the conversion or dismissal. <u>Id.</u> at 373.

16.     Bankruptcy Courts for the District of New Jersey cite to the <u>Lilley</u> factors in conducting an in-depth analysis of bad faith in the context of a motion to dismiss a Chapter 13 bankruptcy case. The <u>Lilley</u> court noted that "[g]ood faith is a term incapable of precise definition"; therefore, the good faith inquiry is a fact intensive determination." <u>Lilley,</u> 91 F.3d at 496 (3d Cir. 1996) (other internal citation omitted)) <u>Myers</u>, 491 F.3d at 125-27;  As there is no clear definition in the Bankruptcy Code as to what constitutes good faith, bankruptcy courts must look at the totality of the circumstances when making such a determination.  <u>In re Goddard</u>, 212 B.R<u>.</u> 233, 238 (D.N.J.1997).

17.     Among the factors considered under the totality of the circumstances inquiry include:

    a.  the nature of the debt;

    b.  the timing of the petition;

    c.  how the debt arose;

d.  the debtor's motive in filing the petition;

e.  how the debtor's actions affected creditors;

f.  the debtor's treatment of creditors both before and after the petition was filed; and

g.  whether the debtor has been forthcoming with the bankruptcy court and the creditors.

In re Dahlgren, 418 B.R. 852 (Bankr. D.N.J. 2009); Lilley, 91 F.3d at 496.

18.     Although the focus on the totality of the circumstances inquiry is fundamental fairness, Matter of Love, 957 F.2d 1350, 1355 (7th Cir. 1992), two inquiries are particularly relevant: whether there is a valid bankruptcy purpose such as maximizing value and whether the debtor seeks to obtain a tactical advantage. In re Integrated Telecom Express, Inc., 384 F.3d 108, 119-120 (3d Cir. 2004) (chapter 11 case). "Other factors may be considered relevant, and no one factor is controlling. Actual fraud, while present in this case, is not necessary to support a determination of bad faith." In re Roth, 2010 WL 2485951, 1 (Bankr. D.N.J. June 14, 2010) (Wizmur, J)(citations omitted).  Once bad faith is raised by a creditor, the debtor bears the burden of proving that its filings were made in good faith. In re Tamecki, 229 F.3d 205, 207 (3d Cir. 2000).

**C.     Application of the Lilley Factors to the Facts of the Case at Bar Requires Dismissal of this Case as a Bad Faith Filing based upon the Totality of the Circumstances.**

19.     In Myers, the Third Circuit reviewed the Bankruptcy Court's application of the Lilley factors in dismissing a Chapter 13 case.  In Myers, a judgment creditor of a married couple and two companies owned by the husband brought suit in state court attempting to recover assets it alleged were fraudulently transferred to a corporation of which the wife was the sole shareholder. *Id*. On the eve of the court's ruling, the wife filed for chapter 13 bankruptcy, which

suggested the wife's "filing was a tactic to prevent an adverse ruling." *Id.* at 125. The creditor's judgment represented the vast majority of the wife's debt. *Id*. Additional facts showed that at the time of filing, the wife "did not meet the requirements for filing a chapter 13 petition." *Id*. at 125.

20.     The Third Circuit affirmed the bankruptcy court's dismissal for filing in bad faith,. *Id*. at 125, noting that all relevant factors should be considered including:

> "the nature of the debt ...; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors."

*Id*. at 125 (quoting Lilley, 91 F.3d 491, 496 (3d Cir.1996)). Applying these factors, the Court affirmed dismissal based on the suspicious timing of the filing, the purpose to defeat the pending litigation, how the debt arose, and the debtor's ineligibility for chapter 13. Myers, 491 F.3d at 125–27.

21.     These factors, and more, exist in the case at bar, as analyzed below.

### a.   The Timing of the Petition.

22.     The suspicious timing of a bankruptcy petition is an appropriate factor for a court to consider in this bad faith analysis. See In re Tamecki, 229 F.3d 205, 208 (3d Cir. 2000). In Tamecki, the debtor accumulated $35,000 in debt while earning less than one-tenth that amount annually. Tamecki,, 229 F.3d at 207. No sudden dramatic event or loss of income necessitated accrual of such a large debt. *Id.* Moreover, the debtor filed for bankruptcy just before finalization of his divorce would have severed a jointly held property interest, thus exposing his property interest to his creditors. *Id.*  The Third Circuit affirmed dismissal of the case for filing in bad faith, stating that, although "ability to repay is not in and of itself sufficient proof of bad faith," the nature of the debt and the timing of the filing exhibited bad faith in filing. Tamecki, 229 F.3d at 208.

23.     Here, when one considers the circumstances of the Debtor's bankruptcy, it becomes clear that the petition was filed for no other purpose than to delay the Movant from executing on Debtor's assets.  The bankruptcy petition was timed for filing upon the lapsing of the appeal period, in order to avoid having to post a bond for an appeal, and to otherwise avoid having to pay to raise the funds necessary to pay Movant's judgment in full.  Thus, the Debtor's bankruptcy petition was filed not for any reorganization purpose such as to maximize value,  but  to frustrate Movant's collection efforts.   Pietrowicz Certification at Paragraphs 5 through 9.

24.     Thus, Debtor's bankruptcy filing is an attempt to defeat the state court litigation without a legitimate reorganization purpose, supporting a finding of bad faith and cause for dismissal of this bankruptcy case.  *Id.* (quoting In re Dami, 172 B.R. 6, 10 (Bankr.E.D.Pa.1994)); In re Antonelli, 2012 WL 280722, at *9–11 (Bankr. D.N.J. Jan. 30, 2012).

### b.  *The Nature of the Debt and How the Debt Arose.*

25.     As set forth in more detail in the Pietrowicz Certification at paragraphs 2 through 6 thereof, the nature of the debt is based upon jury findings for diversion, conversion and misappropriation of corporate asses.  Based upon Debtor's wrongful conduct, creditor was awarded a judgment of $512,000.00.

### c.  *The Debtor's Motive in Filing the Petition.*

26.     This bankruptcy case involves a two-party dispute between Debtor and Movant and thus dismissal of the case for lack of good faith is warranted.  Debtor's only other scheduled unsecured debt is a credit card debt in the amount of $17,471 (approximate).  In Debtor's case, Movant is the largest creditor holding over 96% of all scheduled unsecured claims.

27.     Bad faith exists, of a kind sufficient to warrant dismissal of a Chapter 13 petition, where the debtor filed for bankruptcy only to defeat state court litigation.   In re Goddard, 212 B.R. 233 (D.N.J. 1997).

28.     Two party disputes have no place in bankruptcy because they violate the good faith prerequisite to invoke the bankruptcy court's equitable jurisdiction. In re Shead, 2008 WL 1995373, *3 (S.D. Tex. 2008) (citing In re Anderson Oaks L.P., 77 B.R. 108, 112 (Bankr. W.D.Tex. 1987)). Numerous tribunals have dismissed Chapter 13 cases as bad faith filings when the Debtor's motivation was to avoid payment of a singular debt.   In re Virden, 279  B.R. 401, 410 (Bankr. D.Mass. 2002); In re Mattson, 241 B.R. 629, 634 (Bankr. D. Minn. 1999); In re Tornheim, 239 B.R. 677, 686-87 (Bankr. E.D.N.Y. 1999); In re Peterson, 228 B.R. 19 (Bankr. M.D.Fla 1998); In re Ramji, 166 B.R. 288, 2909 (Bankr. S.D.Tex. 1993).

29.     In the case at bar, Debtor filed her Petition on the expiration of a sixty day stay of execution established by the state court, which would dissolve unless Debtor  paid  Movant's judgment in full.  Frost Certification at Paragraph 18.  Debtor's clear intent is that she only filed her petition to impede Movant's collection attempts, which, in the absence of any other creditors of consequence, clearly demonstrates her bad faith intention in filing for bankruptcy relief.   In re Fleury, 294 B.R. 1, 8 (Bankr. D.Mass. 2003).

30.     Implicit in the Bankruptcy Code is the requirement that every bankruptcy case be filed in good faith. See, e.g., In re Integrated Telecom Express, Inc., 384 F.3d 108, 118 (3d Cir. 2004); In re SGL Carbon Corp., 200 F.3d 154, 160 (3d Cir. 1999); see also In re Brown, 951 F.2d 564, 567 (3d Cir. 1991); Carolin Corp. v.  Miller, 886 F.2d 693, 698 (4th Cir. 1989); In re Chisum, 847 F.2d 597, 600 (9th Cir. 1988); Argus Group 1700, Inc. v. Steinman, 206 B.R. 757 (E.D. Pa. 1997); In re SB

Properties, Inc., 185 B.R. 198 (E.D. Pa. 1995). Therefore, if a petition is filed in bad faith, it may be dismissed for cause. See, e.g., In re Integrated Telecom Express, Inc., 384 F.3d at 118; In re SGL Carbon Corp, 200 F.3d at 162; Carolin Corp. v. Miller; In re Natural Land Corp., 825 F.2d 296 (11th Cir. 1987). The Third Circuit Court of Appeals also has instructed that "[a]t its most fundamental level, the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy." In re Integrated Telecom Express, Inc., 384 F.3d at 119.

31.     The Third Circuit has generally observed: "Our cases have accordingly focused on two inquiries that are particularly relevant to the question of good faith: (1) whether the petition serves a valid bankruptcy purpose, e.g., by preserving a going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage." In re Integrated Telecom Express, Inc., 384 F.3d at 119-20; In re SGL Carbon Corp., 200 F.3d at 165; see Bank of America Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. Partnership, 526 U.S. 434, 453, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999).

32.     For example, a chapter 11 case is filed in bad faith when there is no possibility that the debtor can reorganize. See Carolin Corp. v. Miller; see also Matter of Love, 957 F.2d 1350 (7th Cir. 1992); Matter of Cohoes Indus. Terminal, Inc., 931 F.2d 222. In such an instance, the bankruptcy filing merely serves to delay creditors without increasing the value of the estate or preserving any going concern. In addition, bad faith may be present when the debtor is using the bankruptcy filing "merely to obtain tactical litigation advantages." In re SGL Carbon Corp., 200 F.3d at 165; see, e.g., In re C-TC 9th Avenue Partnership, 193 B.R. 650, 654 (Bankr. N.D.N.Y.

1995) ("Where the primary purpose of the filing of a Chapter 11 case is as a litigation tactic, the petition may be dismissed for lack of good faith").

33.    As the Third Circuit has observed, "Indeed, if there is a "classic" bad faith petition, it may be one in which the petitioner's only goal is to use the automatic stay provision to avoid posting an appeal bond in another court."  In re Integrated Telecom Express, Inc., 384 F.3d 108, 128 (3d Cir. 2004).

34.    Indeed, in In re Argus Group 1700, Inc., 206 B.R. 737, 753 (Bankr. E.D. Pa. 1996), the court noted that, in general, a bankruptcy reorganization case may properly be dismissed as in bad faith "where the bankruptcy petition was filed as a litigation tactic, a forum shopping device and/or to resolve what is essentially a two-party dispute." *cf.* In re Mazzocone, 200 B.R. 568, 576 (E.D. Pa. 1996) (suspension of a bankruptcy case under Section 305 was warranted "if the bankruptcy forum is indeed being used as a forum to resolve what is in essence a two-party dispute.").

35.    Accordingly, a bad faith filing occurs when a bankruptcy petition is filed simply to create a bankruptcy forum for a two-party dispute based upon non-bankruptcy law, involving state court claims and implicating pre-existing state court litigation.  See also In re SB Properties, Inc., 185 B.R. at 205; In re Fonke, 310 B.R. 809, 817 (Bankr. S.D. Tex. 2004); In re Herndon, 218 B.R. 821, 825 (Bankr. E.D. Va. 1998).

36.    Various courts and commentators have identified the following non-exclusive indicia reflecting the possibility of a bad faith bankruptcy filing, the vast majority of which are present in this case:

    (1)    the debtor has few or no unsecured creditors;

(2)     there has been a previous bankruptcy petition by the debtor or a related entity;

(3)     the prepetition conduct of the debtor has been improper;

(4)     the petition effectively allows the debtor to evade court orders;

(5)     there are few debts to non-moving creditors;

(6)     the petition was filed on the eve of foreclosure;

(7)     the foreclosed property is the sole or major asset of the debtor;

(8)     the debtor has no ongoing business or employees;

(9)     there is no possibility of reorganization;

(10)    the debtor's income is not sufficient to operate;

(11)    there was no pressure from non-moving creditors;

(12)    reorganization essentially involves the resolution of a two-party dispute;

(13)    a corporate debtor was formed and received title to its major assets immediately before the petition; and the debtor filed solely to create the automatic stay.

In re SB Properties, Inc., 185 B.R. at 205 (footnotes omitted) (quoting Mellon Bank v. Selig (In re Selig), 1993 Bankr. LEXIS 2240, 1993 WL 764800, at *3 (Bankr. M.D. Pa. July 8, 1993)); see generally In re Cornelius, 195 B.R. 831 (Bankr. N.D.N.Y. 1995); 5 Norton Bankruptcy Law & Practice 3d, § 103:23 (2009).

37.     As Debtor's sole reason for filing his Petition was to thwart payment of Movant's judgment, and to otherwise obstruct Movant's collection efforts by filing a bankruptcy petition in order to avoid having to post an appeal bond, his case should be dismissed as a two-party dispute on grounds of bad faith.

38.     A review of the decisions which have considered whether a bankruptcy case is in essence a two party dispute in the context of a motion to dismiss for bad faith indicate that the cases were dismissed primarily because the filing was motivated by a two party dispute between the debtor and a creditor.  In re Crown Fin. Ltd., 183 B.R. 719, 722-3 (Bankr. M.D.N.C. 1995) (″where a debtor's reorganization effort involves essentially a two-party dispute which can be resolved in state court, and the filing for relief is intended to frustrate or delay the legitimate efforts of creditors to enforce their rights against the debtor, dismissal for cause is warranted″); In re Harvey Probber, Inc., 44 B.R. 647, 650 (Bankr. D. Mass. 1984) (″[Chapter 11] clearly was not intended as an alternate forum for private disputes that only involved the disputants for which there was a well-established albeit less expeditious forum″); In re Van Owen Car Wash, Inc., 82 B.R. 671, 673 (Bankr. C.D. Cal. 1988) (″two-party civil lawsuit involving state law that was brought before a federal Bankruptcy Court″ is an abuse of the Bankruptcy Code); In re Panache Dev. Co., Inc., 123 B.R. 929, 932 (Bankr. S.D. Fla. 1991).

39.     Courts have especially eschewed the use of a bankruptcy proceeding for resolution of a two-party dispute where the intent of the bankruptcy is perceived to be a relitigation of the prior action.  In re Donuts of Seekonk, Inc., 122 B.R. 172, 173 (Bankr. D.R.I. 1990).

### d.  How The Debtor's Actions Affected Creditors.

40.     The Debtor's pre-petition actions caused significant damage and expense to Movant, as described in detail in the Pietrowicz Certification submitted herewith.

41.     The Court is respectfully directed to the Pietrowicz Certification, submitted herewith and incorporated herein by reference, for recitations of the specific acts of nondisclosure

and other deceitful conduct, by the Debtor, prejudicial to Movant's rights as a litigant and judgment creditor.

### e. The Debtor's Treatment of Creditors Both Before and After the Petition Was Filed.

42.    The Debtor's pre- and post-petition treatment of Movant, his only creditor of any significance, can only be described as duplicitous and deceitful.  See Pietrowicz Certification, at paragraphs 9 through 15.

### f. Whether The Debtor Has Been Forthcoming With The Bankruptcy Court And The Creditors.

43.    One of the prerequisites to securing confirmation of an individual Chapter 13 plan is the accurate disclosure of assets and liabilities on the bankruptcy schedules and statements. In other words, a Chapter 13 debtor must act in good faith by making proper disclosure of assets and liabilities when filing a bankruptcy petition, signed under penalty of perjury.

44.    Material misrepresentations and omissions in a debtor's schedules are factors that a court may consider in determining whether dismissal for bad faith is appropriate. See, e.g., In re Fox, 521 B.R.520, 532 (Bankr. D.Md. 2014) (addressing bad faith under 11 U.S.C. § 707(b)(3)(A)). Debtors have an ongoing and independent duty to provide accurate and complete information on their schedules regardless of whether they were assisted by counsel in preparing their schedules. See In re Barrows, 399 B.R. 506, 511 (Bankr. D. Minn. 2009). "The purpose of the schedules is to ensure that there is adequate information available to the debtor's creditors – there should be no independent duty placed upon the creditors to conduct an investigation to ensure that the information in the schedules and statements is true, accurate and complete." In re Seung

Chan Park, 480 B.R. 627, 639 (Bankr. D. Md. 2012). "To allow [a debtor] to use his discretion in determining the relevant information to disclose would create an end-run around this strictly crafted system." Id. (quoting In re Weldon, 184 B.R. 710, 715 (Bankr. D.S.C. 1995)). "Creditors should not have to 'drag the truth' from the debtor and the debtor should be required to abide by the 'cardinal rule: when in doubt, disclose.'" Id. (quoting In re Halishak, 337 B.R. 620, 630 (Bankr. N.D. Ohio 2005)).

45.     If the bankruptcy process is to have credibility, schedules must be accurate and complete. As one bankruptcy court explained:

> Honesty and full disclosure are absolutely required for bankruptcy jurisprudence to function and have credibility among its participants and the public. Full disclosure in any bankruptcy case begins with accurate schedules, including a description of all the debtor's assets. Schedules are signed by debtors under penalty of perjury, and counsel signs bankruptcy petitions under the implicit representations of Rule 9011(b). The gauge for measuring the accuracy of bankruptcy schedules is not calibrated with the same tepid standard applicable to averments in a civil action complaint. Rather, bankruptcy schedules are representations of hard facts about which there should be little or no equivocation, and to the extent there is uncertainty, it should be explained.

In re Bishop, 2009 WL 348844, *3 (Bankr. N.D. Ala. 2009) (Robinson, J.).

46.     Debtor's petition and schedules also point to bad faith, presenting frivolous and legally unsupportable representations. The inaccuracies and inconsistencies outlined above in the schedules submitted with the petition serve to compound the impression that the filing was thrown together by counsel with little attention paid to the accuracy or bona fides of the information presented.

47.     Debtor's Schedule A/B of Property filed with his bankruptcy petition contains numerous instances of property interests which the Debtor values as "unknown." How can Debtor ever hope to confirm a plan which satisfies the Best Interests of Creditors Test of

Section1325(a)(4)?  How can the court or creditors evaluate whether the debtor is distributing more to allowed unsecured creditors than they would receive under a Chapter 7 liquidation? The debtor will be unable to meet his ultimate burden of proof, to prove by a preponderance of the evidence, that the plan complies with the requirements of 11 U.S.C. § 1325.  In re McKinney, 507 B.R. 534, 539 (Bankr. W.D. Pa. 2014)

48.     Debtor has likewise wrongfully claimed Exemptions on his Schedule C well in excess of what is allowed by 11 U.S.C. Section 522(d).

49.     And, as stated above, Debtor incredibly, incorrectly, and undoubtedly deliberately, scheduled Movant's pre-petition judgment debt as contingent and liquidated in an unknown amount. This was done to wrongfully attempt to qualify for Chapter 13 relief. See 11 U.S.C. Section 109(e).   Movant's judgment is in excess of $512,000.   Pietrowicz Certification and exhibits thereto.

50.     Clearly, the Debtor has not been forthcoming with the Bankruptcy Court.  The existence of **_all_** of the Lilley factors in the facts of the case at bar requires dismissal of this case as a bad faith filing based upon the totality of the circumstances.

**C.     Debtor's Bankruptcy Case Should Be Dismissed Pursuant to 11 U.S.C. 1325(a)(3) and (7) for Her Bad Faith Actions in Filing Her Bankruptcy Petition and Plan.**

51.     Although § 1325(a) speaks to plan confirmation and does not explicitly mention petition dismissal, courts have authority under § 105 and § 1307(c) to fashion the appropriate remedy for plans that run afoul of the good faith requirements of § 1325(a).  This is a case for dismissal rather than a mere denial of Debtor's Plan.  Debtor's pre-petition bad faith acts remove him from the class of individuals that federal bankruptcy law was created to protect.  Debtor's

18

post-petition actions in proposing a patently non-confirmable Chapter 13 Plan is in itself a continuation of his pre-petition bad faith conduct.

       ***a.   The Legal Standard under § 1325(a)(3) and (7) is a Totality of Circumstances Test and Debtor has the Burden of Proving that the Plan was Proposed in Good Faith.***

    52.    Bankruptcy Code § 1325(a)(7), enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (″BAPCPA″), added the plan confirmation requirement that ″the action of the debtor in filing the petition was in good faith.″ This provision is applicable to Debtor's bankruptcy filing.  The case law pertaining to the standard of review under § 1325(a)(7) indicates that the same good faith analysis that is applied to Bankruptcy Code § 1307(c) should be applied to § 1325(a)(7).  In re Torres Martinez, 397 B.R. 158, 165 (BAP 1st Cir. 2008) (implying that the obligation of a chapter 13 debtor to commence a chapter 13 case in good faith now resides in § 1325(a)(7) rather than § 1307(c)); In re Bland, 2008 WL 2002647, *2 (Bankr. N.D.W.Va. 2008) (treating § 1325(a)(7) as an additional statutory basis to dismiss  a bad faith chapter 13 filing); In re Shafer, 393 B.R. 655, 659 (Bankr. W.D.Wis. 2008) (concluding that § 1325(a)(7) ″appears to be nothing more than a codification of the long-standing judge-made rule and a corollary of § 1307(c)....″); In re Bland, 2008 WL 2002647, at *2; see also In re Aprea, 368 B.R. 558, 566 (Bankr. E.D.Tex. 2007). (treating § 1325(a)(7) as an additional statutory basis to dismiss a bad faith chapter 13 filing.

    53.    Finally, in determining whether a debtor has filed her petition in good faith for purposes of § 1325(a)(7), the court must determine whether under the circumstances of the case

there has been an abuse of the provisions, purpose, or spirit of the bankruptcy code.  In re Bateman, 515 F.3d 272, 283 (4th Cir. 1982).

54.     The debtor bears the burden of proof concerning good faith issues under § 1325 and the movant bears the burden of proof under § 1307(c).  See In re Abbas, 2007 WL 4556665, at *5 quoting In re Delbrugge, 347 B.R. 536, 540 (Bankr. N.D.W.Va. 2006).  Because the good faith for cause test implicit in § 1307(c) is now codified at § 1325(a)(7) the burden rests upon the debtor for purposes of confirmation, and upon the movant for purposes of dismissal.

55.     Thus, in considering the totality of the circumstances as set forth more fully hereinabove, the Plan violates Section 1325(a)(3) of the Code as not being proposed in good faith.

**b.  The Plan's Proposed Payment of Movant's Claim is Insignificant when considering that the Claim was Incurred by Debtor's Intentional Misappropriation Of Movant's Property by False Pretenses.**

56.     Among the factors that should be considered, courts should determine whether a major portion of the claims sought to be discharged arise out of pre-petition fraud or other wrongful conduct and whether the chapter 13 plan proposes to repay only a minimal portion of those claims.  Neufeld v. Freeman, 742 F.2d 149 at 152-53 (4th Cir. 1986).  In Debtor's case, his Plan only proposes to pay $325 per month for 60 months or less than four percent of Movant's claim.  Movant's claim comprises 99.5% of the creditor body of this case, and arises out of Debtor's pre-petition intentional misappropriation of funds under false pretenses.  See generally Pietrowicz Certification submitted herewith.

57.     In the bankruptcy case of In re Herndon, 218 B.R. 821, 825, n. 5 (Bankr. E.D.Va. 1998), the court dismissed the Debtor's bankruptcy case stating that Debtor's proposed 36 month plan only provided for the payment of approximately six percent of an embezzlement

claim, and noting that even if the plan was modified to extend the payment period to 60 months it would still only provide the minimal sum of thirteen percent of the claim. **"Such a nominal payment on a potentially non-dischargeable claim is evidence of bad faith."** In re Herndon, 218 B.R. at 825; see Neufeld, 794 F.2d at 153; In re Oliver, 186 B.R. 403, 406 (Bankr. E.D.Va. 1995). The court's dismissal in the Herndon case clearly demonstrates that it felt the Debtor would not be able to overcome her bad faith even if she increased her plan repayment period from 36 months to the maximum 60 month repayment period.

58.    Thus, confirmation of the "plan" must be denied, and the bankruptcy case dismissed.

## CONCLUSION

59.    The conclusion is inescapable in this case, by the nature of the debt, the timing of the petition, the Debtor's willful non-disclosure on his petition and schedules, and the extraordinary treatment of the debt in the petition and Chapter 13 plan, that the petition was filed in bad faith and for no purpose other than to delay the only creditor in this case of any consequence. The pre-petition and post-petition actions of the Debtor served to hinder Movant's execution on his state court judgment.

60.    For the foregoing reasons this Court should deny confirmation of the Debtor's Plan and dismiss this bankruptcy case with prejudice.

**WASSERMAN, JURISTA & STOLZ, P.C.**
Counsel for Creditor, Robert M. Pietrowicz


By: _/s/ Leonard C. Walczyk_            .
     LEONARD C. WALCZYK

DATED: November 11, 2019

S:\8584 William Charles Hovey\Opposition to Motion to Dismiss and Cross-Motion.docx