**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-2(c)**
**WASSERMAN, JURISTA & STOLZ, P.C.**
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Phone: (973) 467-2700
Fax: (973) 467-8126
Co-Counsel for Robert M. Pietrowicz, Creditor
**LEONARD C. WALCZYK**

**FLASTER LAW GROUP**
30 Columbia Turnpike, PO Box 21
Florham Park, NJ 07932
Phone: (973) 822-7900
Fax: (973) 822-7923
Co-Counsel for Robert M. Pietrowicz, Creditor
**NEAL H. FLASTER**

| | |
|---|---|
| **In Re:** | Chapter 13 |
| **WILLIAM CHARLES HOVEY,** | Case No. 19-28149 |
| | Honorable Rosemary Gambardella |
| Debtor. | |

_____

**MEMORANDUM IN OPPOSITION TO THE NOTICE OF CROSS MOTION FILED ON BEHALF OF THE DEBTOR AND IN OPPOSITION TO DEBTOR'S REPLY TO CREDITOR'S MOTION IN LIMINE**
_____

TO: HONORABLE ROSEMARY GAMBARDELLA,
    UNITED STATES BANKRUPTCY JUDGE

Creditor, Robert M. Pietrowicz submits the within Memorandum in opposition to the

Notice of Cross Motion filed on behalf of the Debtor, William C. Hovey and in opposition to the Debtor's Reply to Creditor's Motion in Limine.

**PRELIMINARY STATEMENT**

On September 24, 2020, Debtor, William C. Hovey ("Hovey") filed for reorganization under Chapter 13. In subsequent amendments to Debtor's petition, he seeks $850,000 in "credits" from Creditor, Robert M. Pietrowicz ("Creditor") based on Debtor's self-serving claim that the assets of the non-bankrupt co-defendant judgment debtor, Telemark CNC, LLC ("Telemark CNC" or "Company") are allegedly worth over $1.4 million dollars at fair market value. See Debtor's valuation report filed on May 4, 2020. Although Debtor now moves by Notice of Cross Motion to strike Creditor's expert report that calculated the value of Telemark CNC's assets based on "forced liquidation value", he has no standing to assert such a position because regardless of the Debtor's equity interest in the Company, the assets of Telemark CNC are not property of the Debtor's bankrupt estate.

It is axiomatic that although Debtor is an equity owner of Telemark CNC by virtue of his Member status in the Company, he has no property interest in the specific assets of Telemark CNC, which is not in bankruptcy. Since the Court lacks jurisdiction over Telemark CNC's assets, it necessarily follows that the Company's assets are not subject to administration in Hovey's personal bankruptcy case. Thus, although the Debtor may theoretically claim that he has an intangible property interest in Telemark CNC as a Member of Telemark CNC, the Debtor's claim for a credit belongs solely to the Company and not the

2

Debtor. As a result, the Debtor lacks standing in this Court to pursue his claim for personal gain, since to the extent such claim exists, the credit belongs to the Company's debtors outside of the bankruptcy and not to the bankrupt Debtor.

In addition, Debtor's Notice of Cross Motion asserts various other claims in his moving papers which are without merit and therefore, should be rejected by this Court. These include but are not limited to Debtor's allegation that the letter from his attorney, Dean Sutton, Esq. dated September 24, 2019 providing notice of Debtor's filing of bankruptcy applies to sales of assets (e.g., machinery, equipment, parts, tools, inventory, materials, etc.) owned by the non-bankrupt Company, such that the automatic stay applicable to the Debtor incorporated assets of Telemark CNC that were subject to a pre-petition levy and sale conducted by the Morris County Sheriff's Office on August 19, 2019. In the absence of legal or statutory authority provided by the Debtor or his counsel in the September 24, 2019 correspondence supporting such a claim, there is no basis to conclude that the automatic stay imposed by the Debtor's bankruptcy filing covered assets of the non-bankrupt entity, Telemark CNC. Certainly, there is nothing in counsel's September 24, 2019 letter that supports the position the Debtor has adopted today. Accordingly, as set forth below in greater detail, Debtor's unilateral declaration that Telemark CNC's assets were sold after counsel's September 24, 2019 letter notice is of no force and effect.

## COUNTER-STATEMENT OF FACTS

On or about March 20, 2014, Creditor filed suit in the Superior Court of New Jersey, Law Division, Morris County in the matter captioned, *"Robert M. Pietrowicz, individually and as a member of Telemark Holdings, LLC vs. William C. Hovey, individually and as a member of Telemark Holdings LLC, Telemark CNC, LLC, et al"* under Docket No. MRS-L-796-14 seeking money damages and other relief from the Debtor and Telemark CNC arising out of the Debtor's unlawful conduct in the operation of the parties jointly owned limited liability company, Telemark Holdings, LLC. In this Complaint, Creditor sought damages for *inter alia*, conversion (Count One), unlawful interference with economic advantage (Count Two), tortious interference with economic advantage (Count Three), unjust enrichment (Count Four), quantum merit (Count Five), violation of the covenant of good faith and fair dealing (Count Six), imposition of a constructive trust (Count Seven), breach of common law fiduciary duty (Count Eight) and other prayers for relief (See Exhibit A, annexed to the Certification of Neal H. Flaster, Esq., dated September 22, 2020). On May 15, 2017, an Amended Complaint and Jury Demand was filed with the Superior Court, Law Division, Morris County (See Exhibit B, annexed to the Certification of Neal H. Flaster, Esq., dated September 22, 2020).

The case was tried before a jury beginning September 10, 2018 and ending on November 1, 2018. Upon the conclusion of the case, the jury considered the questions presented to them at the close of summations based on a special jury verdict sheet submitted

4

to them and rendered a unanimous verdict, as follows:

1. **Jury Verdict Question One**. Do you find that Defendant wrongfully executed dominion and control over goods, in this case machines, equipment, raw materials, inventory tools and parts along with any monies that were due and owing to Telemark Holdings, LLC but were allegedly to the Defendant himself or Telemark Holdings, LLC but were allegedly transferred to the Defendant himself or Telemark CNC, LLC in which the Plaintiff had an ownership interest?

2. **Jury Verdict Question Two**. What amount of money do you believe would fairly and reasonably compensate the Plaintiff for the actions of the Defendant in depriving the Plaintiff of his interest in the machines, equipment, raw materials, inventory, tools, parts and/or monies as set forth in Interrogatory 1?. Put another way, what was the fair market value of the property (along with any monies you find to have been inappropriately converted) you found defendant to have converted as of on or about June 2011 and what was the Plaintiff's interest in that value.

In response thereto, the jury held that $250,000.00 or ½ of the $500,000.00 fair market value of the property *calculated as of June 2011* and other monies converted by Debtor was the fair measure of the Creditor's damages.

3. **Jury Verdict Question Six**. Do you find that the Defendant as a result was enriched beyond his contractual rights as a member of Telemark Holdings, LLC and that Plaintiff has been damaged as a result?

4. **Jury Verdict Question Seven.** What amount do you find would fairly and reasonably compensate Plaintiff as a result?

In response thereto, the jury found that the Creditor was entitled to an additional $12,500.00 in damages for unjust enrichment.

5. **Jury Verdict Question Ten**. What do you find are the damages (if any) that the plaintiff, Robert Pietrowicz, individually or as a member of Telemark Holdings, LLC has proven he suffered as a result of Defendant's breach of the covenant of good faith and fair dealing?

5

Further, the jury found that the Creditor was entitled to additional damages in the amount of $250,000.00 based on Debtor's breach of the covenant of good faith and fair dealing. Based on the jury verdict sheet, the jury's total damage award totaled $512,500.00 (See Exhibit C, annexed to the Certification of Neal H. Flaster, Esq., dated September 22, 2020).

On November 16, 2018, the judgment was reduced to writing and entered by the Court against Debtor Hovey and Telemark CNC in the amount of $512,500.00 plus pre-judgment interest dating from March 26, 2014 through November 1, 2018 to be calculated using the default interest rate provided by New Jersey Rules of Court (See Exhibit D, annexed to the Certification of Neal H. Flaster, Esq., dated September 22, 2020). On March 5, 2020, an Amended Judgment was entered on the civil docket in the Superior Court, imposing pre-judgment interest payable by Debtor and Telemark CNC pursuant to Court Rule beginning on March 26, 2014 and ending on November 1, 2018 totaling $55,457.43, with additional pre-judgment interest in the amount of $1,684.80 calculated through December 19, 2019, the date of docketing of the judgment with the Superior Court (See Exhibit E, annexed to the Certification of Neal H. Flaster, Esq., dated September 22, 2020). On March 7, 2019, a Revised Amended Judgment was entered by the Court correcting the amount of additional prejudgment interest awarded to the Creditor (See Exhibit F, annexed to the Certification of Neal H. Flaster, Esq., dated September 22, 2020).

Thereafter, on March 7, 2019, the Debtor provided Creditor with his responses to an

Information Subpoena addressed to himself individually and to Defendant, Telemark CNC. As set forth therein, the Debtor designated specific property as "personal" to himself and "work related" to specific property owned by Telemark CNC (See Exhibit G, annexed hereto to the Certification of Neal H. Flaster, Esq., dated September 22, 2020). Subsequently, on June 21, 2019, due to Debtor's non compliance with his pre-petition post judgment discovery obligations, an Order of Enforcement was entered in state court requiring Debtor and Telemark CNC to permit Creditor to undertake a full and complete inventory inspection of all machinery, equipment, inventory, parts, tools, materials, intellectual property, and bank records of Telemark CNC, with the inventory inspection to be taken by the Morris County Sheriff's Office in the presence of the Creditor and his attorney. Debtor was also required to provide more specific responses both as to himself individually and also, on behalf of Telemark CNC within three (3) weeks of service of same on his attorney and to appear for his supplemental deposition testimony in connection with the Judgment. Creditor and Telemark CNC were given ten (10) days from posting of an Order from the Appellate Division permitting them to proceed with their appeal despite their failure to submit a Brief in accordance with the Appellate Division's scheduling Order, with Defendants given an opportunity at that time to petition the trial court by motion to post a supersedeas bond or to provide appropriate security for the Judgment pending appeal in accordance with the New Jersey Court Rules. In addition, the Order of Enforcement provided that in the event Defendants failed to make the required application within the time provided or otherwise

failed to post appropriate security, the Creditor was entitled to immediately exercise his rights as a judgment creditor to execute against assets of the Debtor and Telemark CNC without further Court Order (See Exhibit H, annexed to the Certification of Neal H. Flaster, Esq., dated September 22, 2020).

The Appellate Division entered a Scheduling Order on July 19, 2019, which required Defendants to file a brief by August 12, 2019 (See Exhibit I, annexed to the Certification of Neal H. Flaster, Esq., dated September 22, 2020). When they failed to comply with same, on July 31, 2019, Debtor filed an emergent application with the Appellate Division on behalf of himself individually and Telemark CNC contending that they would suffer irreparable harm if the judgment remained in place and further execution was permitted against their assets (See Exhibit J, annexed to the Certification of Neal H. Flaster, Esq., dated September 22, 2020). This application was denied by the Appellate Division by Order entered on August 1, 2019 (See Exhibit K, annexed to the Certification of Neal H. Flaster, Esq., dated September 22, 2020). Subsequently, on September 23, 2019, the Appellate Division on its own motion, dismissed the appeal filed by Debtor and Telemark CNC on the basis that they failed to file a timely brief (See Exhibit L, annexed to the Certification of Neal H. Flaster, Esq., dated September 22, 2020).

A pre-petition Sheriff's sale of Telemark CNC's assets located at its place of business at 429 Rockaway Valley Road, Boonton, New Jersey took place on August 19, 2019 in connection with Creditor's levy on Telemark CNC. To the extent that personal assets of the

Debtor were located therein that, they were identified by the Sheriff's Office as subject to levy. At that time, all machines, equipment, inventory, parts and the like owned by Telemark CNC based on prior inventories taken by the Morris County Sheriff's Office which were subject to levy and sold to Creditor for $100.00 at an auction conducted by the Sheriff's Office on that date (See Exhibit M, annexed to the Certification of Neal H. Flaster dated September 22, 2020).

Thereafter, to avoid the ramifications of the Appellate Division's refusal to grant an emergent stay of Creditor's execution rights and the subsequent dismissal of the appeal, the Debtor filed for bankruptcy on September 24, 2019. On the same date, Debtor's attorney, Dean Sutton, Esq. faxed correspondence to Creditor's counsel stating that the Debtor had filed for bankruptcy under 11 U.S.C. Chapter 13 and attached a copy of notice of Debtor's petition with his letter confirming same (See Exhibit N, annexed to the Certification of Neal H. Flaster, Esq., dated September 22, 2020). There is no mention of Telemark CNC in Mr. Sutton's correspondence of September 24, 2019 and it is uncontroverted that the Company did not file for bankruptcy on that date or any date thereafter.

Contrary to the Debtor's claim, while the Debtor's 1996 Ford Mustang may have been levied on by the Morris County Sheriff's Office because it was located at Telemark CNC's business location, title to same was never provided to the Creditor prior to or after the Debtor's bankruptcy filing on September 24, 2019. As such, the motor vehicle has never been removed by the Creditor.

On June 3, 2020, the Debtor filed at Docket entry No. 54, an Amended Schedule acknowledging in response to question No. 19, that Telemark CNC ceased operating business on August 16, 2019 and had $ 0 value (See Exhibit O, annexed to the Certification of Neal H. Flaster, Esq, dated September 22, 2020. None of the assets sold by the Creditor in a private sale on September 25, 2019 and the subsequent internet auction on December 11, 2019 constituted property of the Debtor; rather, the sales consisted solely of property of the non bankrupt entity, Telemark CNC and in some instances, property of Creditor's wholly owned company, Single Point Precision, LLC, none of which were covered by the automatic stay as a result of the Debtor's bankruptcy filing on September 24, 2019. No amended claim petition was filed by Creditor providing for a credit to the Debtor for these sales because the property in question is owned by the non-bankrupt entity, Telemark CNC and not the Debtor.

On May 4, 2020, in accordance with an Order entered by this Court that required filing of expert reports on that date, the Debtor filed his valuation report in express reliance, *inter alia*, on standards set for appraisals by the National Association for Professional Appraisers ("NAPA"). However, because the NAPA requires that such appraisals must be undertaken without bias by the appraiser, the Debtor's valuation report was incompetent as an expert report because the Debtor is inherently biased as he is the only one who will benefit by exaggerating the value of Telemark CNC's assets. Moreover, because the conclusions reached by the Debtor in his report are in material part not based solely on his personal knowledge, perception and experience but rather, on his communications with third persons

on matters outside the scope of his personal knowledge, Debtor cannot satisfy the lay opinion requirements set forth in Rule 701. It is only now, in response to the Creditor's Motion in Limine to strike the report and expert testimony, that the Debtor recognizes the futility of his position and has withdrawn his May 4, 2020 valuation report. Nonetheless, despite Debtor's voluntary withdrawal, Creditor submits that Debtor's valuation report must be stricken by Order of this Court, with the Debtor subject to cross examination at final hearing based on this report.

Mr. Sutton's demand for information set forth in his certification at paragraph 18, dated September 8, 2020 requesting information as to the names and addresses of purchasers' of equipment and other documentation and/or information in connection with the private sale and internet auction of Telemark CNC's assets is not properly before this Court by motion, nor is it reflected in the proposed form of Order submitted by Debtor's counsel. Instead of filing a Notice of Motion to Compel or other relief, Debtor's counsel informally seeks to have this Court render a decision on this issue based on limited facts, with no substantiation by Debtor as to why the requested documentation and/or information is relevant or material.

Creditor previously provided Debtor's counsel with information regarding the sales referenced above, as opposing counsel acknowledges in paragraph 17 of this Certification, albeit claiming that the information is not "fully responsive", which is disputed. Mr. Sutton's request for more specific responses will be taken under advisement, with a response forthcoming outside the framework of the Creditor's Notice of Motion and Debtor's Notice

of Cross Motion pending before Your Honor.

As set forth *infra*, Debtor's claim that the expert report by Creditor's expert, Alan Atkins should be stricken is without merit as there are multiple valuation methodologies available to an appraiser to utilize depending on the circumstances, including but not limited to "forced liquidation value", "orderly liquidation value", "fair value" and "fair market value". As set forth herein, the report prepared by Creditor's expert in valuing the assets of Telemark CNC, a defunct company based on "forced liquidation value" is the appropriate method to be employed.

## LEGAL ARGUMENT

**1. Debtor lacks the requisite legal standing to seek credit for the Judgment based on the theory that the assets of the non bankrupt party, Telemark CNC sold to the Creditor at a Sheriff's sale and thereafter sold at a private sale and public auction are subject to "fair market appraisal" as opposed to "forced liquidation value".**

Debtor does not have legal standing to claim that the valuation of the assets of the non-bankrupt judgment debtor, Telemark CNC must be subject to a "fair market value" calculation as opposed to "forced liquidation value" as his only interest in Telemark CNC is as a "Member" and not in the actual assets themselves. As set forth *infra*, in a corporate context, the individual owning shares in a corporation owns an interest in the corporation itself only and not the assets owned by the corporation. Thus, property of an individual debtor's bankruptcy estate does not extend to non-debtor corporate/company assets simply

12

because the individual debtor owns shares in the non debtor corporation or in the context of a limited liability company, the individual has Member ownership interest in the limited liability company.

It is, of course, axiomatic that because "...a corporation is a separate entity from its shareholders, the assets of he shareholders are not "property of the estate", even though the shareholders have an equity interest in the company..." *State of New Jersey Department of Environmental Protection v. Ventron Corp.*, 94 N.J. 472, 500 (1983); *Lyons v. Barrett*, 80 N.J. 394, 300 (2982). Here, the Debtor, as an equity owner of Telemark CNC's assets, has no legal authority to make a claim against the Creditor for a credit of $850,000 based on his displeasure with the appraisal conducted by Creditor's expert of the Company's assets, as that right belongs solely to Telemark CNC alone, subject to claims by creditors of the Company, including the Creditor. See, *In re H.S.M. Kennewick*, L.P., 347 B.R. 569, 571 (Bankr. N.D. Tex. 2006) ("even where 100% of a subsidiary stock is owned by the shareholder in question, the shareholder has not acquired and has no property interest in specific assets of the subsidiary.") See also, *In re Funnemann*,(155 B.R. 197, 200 (Bankr. SD. Ill. 1993) (the Court held that it had no jurisdiction over specific ownership property when a partner, rather than the partnership itself is in bankruptcy...it necessarily follows that assets of a partnership may not be administered in a bankruptcy case of a member partner").

Fundamental principles of corporate law hold that since a corporation and its shareholders or a limited liability company and its members are separate legal entities, the

underlying entities own the assets and not the shareholders themselves. See, *In re Harder*, 413 B.R. 827 (Bankr. D. Or. 2009); *Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 318 (5th Cir. 1984). For the corporation, the shareholder's bankruptcy estate's property interest extends only to intangible personal property rights represented by stock certificates and nothing more. *Harder*, supra; See also, *Peoples Bankshares, Ltd v. Dept. Banking* (*In re Peoples Bankshares*, Ltd.), 68 B.R. 536, 539 (Bankr. N.D. Iowa 1986).

In the case at bar, Debtor elected to file for Chapter 13 bankruptcy relief for himself individually and not on behalf of Telemark CNC, which he could have done if he intended to expose the Company's assets to the jurisdiction of this Court. Because the Debtor elected not to do so, he has no standing to claim that the appraisal of Telemark CNC's assets must be valued at a "fair market value", as opposed to "forced liquidation value", "fair value" or "orderly liquidation value" because the assets are owned by the non-bankrupt judgment debtor, Telemark CNC. Only the Company can make that argument and it is not subject to the jurisdiction of this Court.

**2.   In the alternative, should this Court determine that the Debtor has standing to argue as to the valuation standard, the appropriate standard is forced liquidation value because Telemark CNC ceased operations on August 16, 2019.**

Should the Court consider Debtor's Notice of Cross Motion to Strike Creditor's expert report because his expert, Alan Atkins used a "forced liquidation"valuation in appraising Telemark CNC's assets despite Debtor's lack of standing, the body of case law interpreting

14

the form of appraisal to be used have consistently held that in determining solvency of a business at a particular point of time, if the business "is so close to shutting its doors" that a going concern standard is unrealistic and/or that the "business is on its deathbed", the forced liquidation value should be the standard used in valuing the company's assets. See, *EBC I, Inc. v. American Online, Inc.*, 380 B.R. 348 (2008), quoting *In re Vadnais Lumber Supply, Inc.*, 100 B.R. 127, 1431 (Bankr. D. Mass. 1989); See also, *Loop Corp. v. U.S. Trustee*, 379 F. 3d 511, 517 n.3( 8th Cir. 2004); *Mitchell v. Inv. Sec. Corp.*, 67 F. 2d 669, 671-672 (5th Cir. 1933), *Langham, Langston & Burnett v. Blanchard*, 246 F. 2d 529 (5th Cir. 1957) and *In re Windor Indus., Inc.*, 459 F. Supp. 270, 276-77 (N.D. Tex 1978).

Indeed, by Debtor's own admission, the non bankrupt entity, Telemark CNC ceased operations on August 19, 2019 following the involuntary sale of the Company's assets to the Creditor which was conducted by the Morris County Sheriff's office on that date. Since it was no longer in business at the time of Mr. Atkins appraisal dated December 9, 2019, Creditor's expert properly valued the Company's assets at "forced liquidation value" and no other.

Each of the cited cases by the Debtor in opposing this conclusion are fully distinguishable from the facts of the within case. For example, while the Appellate Division in *Brunswick Bank & Trust v. Heln Management*, LLC, 453 N.J. Super, 324 (App. Div. 2018) acknowledged that the court had the ability to impose a credit based on fair market value, this involved a situation where the state chancery judge recognized that in five consolidated cases

the loans in question involved multiple construction and development loans that may have been over collateralized, thereby resulting in a potential windfall to lenders following foreclosure on the properties. To avoid that result, the state chancery judge required "a full and complete factual record" to clear up the then existing "muddled" record.

Here, Debtor's citation to a portion of the specific language employed by the Appellate Division in *Brunswick,* supra is out of context to the within case as there is no dispute between the Debtor and Creditor as to the amount of the judgment. Moreover, here, the lawsuit between the Debtor and Creditor arose not in a foreclosure proceeding but in a dispute between two business partners involved in a commercial transaction. Most importantly, as noted in *Brunswick*, because that case involved a foreclosure situation, the Court was sensitive to the potential for a forfeiture and that "because equity abhors a forfeiture, a court of equity may in appropriate circumstances through application of fair market value credits or by other recognized means, spare a party from an unwarranted forfeiture". See *Dunkin Donuts of Am., Inc. v. Middletown Donut Corp.*, 100 N.J. 166, 182 (1985). Because the pursuit of a foreclosure remedy summons the court's equity jurisdiction, the court may through the imposition of flexible remedies, had the ability to adjust the parties' rights with regard to the facts, to achieve a fair and just result, citing to *Sears, Roebuck & Co.v. Camp*, 124 Eq. 403, 411-12 (E. & A. 1938). As noted in the case, ascertaining the fair market values of property acquired by Brunswick Bank was one way in which a court of equity could determine whether it had been overcompensated. *Brunswick*,

supra. Thus, despite Debtor's claim to the contrary, the *Brunswick* court did not hold that "fair market value" determination was only way to remedy the potential inequity resulting from the bank being over secured. Rather, the Court held that it was one mechanism to apply to ensure that the end result was equitable in all respects.

Similarly, *Capital Bank of New Jersey v. Goldstein,* an unpublished opinion by the Appellate Division, Docket No.: A-3219-10T1 cited by the Debtor does not stand for the proposition that "fair market" valuation is the only applicable remedy. As noted therein in footnote 1, citing to *MMU of New York., Inc. v. Grieser*, 415 N.J. Super. 37, 45-48 (App. Div. 2010) while that case held that a court has the inherent inequitable authority to allow a fair market value credit to prevent a double recovery by a creditor against a debtor, there is nothing in the opinion which remotely suggests that "fair market value credit" is the exclusive remedy. In the matter of *In re: Karagiannis*, 453 B.R. 548 (Bankr. N.J. 2011), the Court held that in a case involving a mortgage foreclosure, it would consider a "fair value" hearing, a term distinct from the "fair market value" credit that the Debtor seeks to impose in the within matter. Nonetheless, there is nothing in *Karagiannis*, supra like the other cases cited above by the Debtor, which restricts a court in equity, from imposing equitable remedies consistent with the law and facts involved.

As to the Debtor's argument that *Smith v. Lopez*, 304 N.J. Super. 26 (Ch. Div. 1966) is inapplicable because Creditor Pietrowicz sold assets after the Debtor's bankruptcy petition was filed, the Debtor is misguided. At set forth supra, there was never any sale of Debtor's

assets after he filed for Chapter 13 Bankruptcy on September 24, 2019. Rather, the Creditor sold portions of Telemark CNC's assets that he lawfully acquired at the August 19, 2019 Sheriff's sale at both a private and public auction. The Debtor, as a Member of Telemark CNC, has no personal interest in the assets of the Company, which were owned by Telemark CNC. Because the two are separate legal entities, their interests cannot be muddled together as Debtor seeks to do here, to give him rights to Telemark's property that do not belong to him. See, *In re Harder*, supra at 827 (Bankr. D. Or. 2009); See also, *Sun Towers, Inc.,* supra at 318.

> **3. The appraisal report by Creditor's expert is not subject to being stricken and his testimony excluded simply because the Debtor does not accept the valuation**.

Debtor's efforts to strike the expert report filed by the Creditor's expert, Alan Atkins on the basis that Mr. Atkins utilized a "forced liquidation" value is without merit. As recognized in numerous cases cited supra, Mr. Atkins use of a "forced liquidation" valuation is supported by case law involving insolvent or out of business companies. See, *EBC I, Inc. v. American Online, Inc.*, supra quoting *In re Vadnais Lumber Supply, Inc.*, supra; See also, *Loop Corp*, supra at 517 n.3 and *Mitchell* supra at ,671-672 (5th Cir. 1933) and *In re Windor Indus., Inc.*, supra at 276-77. Simply because the Debtor disagrees with the appraisal methodology employed by Creditor's expert does not does not mean that the conclusion reached is "unreliable and irrelevant expert testimony" as the Debtor claims.

Indeed, Debtor's cite to *BFF v. Resolution Trust Corporation*, 511 U.S. 531 (1994) does not support his claim that use of "forced liquidation valuation" is per se invalid simply because the expert employed a different appraisal method than cited in that case Specifically, the Supreme Court in *BFF* held that in the context of a foreclosure action the standard of "reasonably equivalent value" would apply to foreclosed real property, where the price received at the foreclosure sale would be considered "reasonably equivalent value" so long as all the requirements of the state's foreclosure laws were complied with. Id., at 3-18. In that regard, the Court held that:

> fair market value presumes market conditions that, by definition, do not obtain in the forced-sale context, since property sold within the time and manner strictures of state prescribed foreclosure is simply worth less than property sold without such restrictions. "Reasonably equivalent value" also cannot be read to mean a "reasonable" or fair" forced sale price, such as a percentage of fair market value".

*BFF*, supra at 3-14.

In the within matter, it is undisputed that the parties are not involved in a foreclosure proceeding. The Creditor obtained judgment against the Debtor as a result of a law suit, and his expert used appropriately used "forced liquidation" valuation in appraising Telemark CNC's assets after the Company "closed its doors", consistent with the methodology approved in multiple published opinions. See, *EBC I, Inc. v. American Online, Inc*., 380 B.R. 348 (2008), quoting *In re Vadnais Lumber Supply, Inc.*, 100 B.R. 127, 1431 (Bankr. D. Mass. 1989); See also, *Loop Corp. v. U.S. Trustee*, 379 F. 3d 511, 517 n.3( 8th Cir. 2004); *Mitchell*

*v. Inv. Sec. Corp.*, 67 f. 2d 669, 671-672 (5th Cir. 1933) and *In re Windor Indus., Inc.*, 459 f. Supp. 270, 276-77 (N.D. Tex 1978). The fact that the Debtor disagrees with the methodology employed does not render the results invalid or not relevant contrary to Rule 702.

In response to the Debtor's argument that he is entitled to provide lay opinion testimony at time of final hearing pursuant to Rule 701, Creditor opposes same and relies on the arguments for disallowing same set forth in his Motion in Limine.

Accordingly, for the reasons set forth above, it is respectfully submitted that the Debtor's Notice of Cross Motion be denied in its entirety.

                Respectfully,

                s/Neal H. Flaster

NHF:aes
cc: Dean Sutton, Esq.
  Leonard Walczyk, Esq.